TIMOTHY COURCHAINE
United States Attorney
District of Arizona

PATRICK E. CHAPMAN
Arizona State Bar No. 025407
Assistant United States Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Patrick.Chapman@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          vs.<br><br>Santiago Retana,<br><br>                    Defendant. | No. CR-24-01949-PHX-SHD<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

The United States recommends that this Court sentence the defendant to 37 months' imprisonment followed by supervised release. Such a sentence is sufficient, but not greater than necessary in light of the sentencing factors in 18 U.S.C. § 3553 and to comply with the purposes of sentencing.

## I.     FACTS

In April 2024, the Crime Gun Intelligence Center notified the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) of suspicious firearm purchases made by Santiago Retana, the defendant. (Presentence Report (PSR) at ¶ 7.) Accordingly, an ATF agent opened an investigation and determined that the defendant had purchased over 100 firearms between January and May of 2024 and was associated with multiple firearm recoveries with short times-to-crimes. (*Id.* at ¶ 9.)

In May 2024, agents twice attempted to interview the defendant at his home about his firearm purchases but were unsuccessful. (*Id.* at ¶ 10.) Agents later learned the

defendant was awaiting transfer of a Barrett .50 caliber rifle at a federal firearms licensee (FFL) in Peoria, Arizona and set up an interdiction. (*Id*. at ¶ 11.) On June 14, 2024, local police stopped the defendant after he picked up the rifle and agents conducted an interview. (*Id*.) The defendant denied knowing that ATF was attempting to contact him despite agents going to his house twice in May of 2024. He claimed that he had purchased ten firearms in the preceding six months and liked to go shooting at Sycamore Canyon. (*Id*.) He stated that he had sold a couple of the firearms at a gun show and traded one or two more. (*Id*.) Agents then confronted the defendant about having over 100 known purchases and the defendant exclaimed, "That's a lot." (*Id*.)

Agents provided the defendant with a list of his purchases, and he told them he frequented Virtus Armament and Phoenix Gun Company because they gave deals on bulk purchases and didn't ask questions. (*Id*. at ¶ 12.) Agents again confronted the defendant about his conduct and he admitted to selling half of his firearms to "Jesus Compa" and half to "Primo." (*Id*. at ¶ 13.) He was buying the firearms on their behalf. (*Id*. at ¶ 14.) Primo would pay him $1,400 for each AK-style rifle. (*Id*. at ¶ 13.) The defendant admitted to purchasing multiple FN M249S rifles and a Barrett (.50 caliber) for Compa and would exchange them at a Phoenix apartment complex. (*Id*.) Agents warned the defendant about dealing firearms without a license and straw purchasing before releasing him. (*Id*.)

In October 2024, agents learned that the defendant had continued to purchase firearms – particularly AK-style models – from multiple FFLs. (*Id*. at ¶ 18.) Agents again attempted contact but were unsuccessful. (*Id*. at ¶ 19.) The United States then indicted the defendant on 39 counts of Material False Statement During the Purchase of a Firearm. (*Id* at ¶ 20.) Days later, agents arrested the defendant at a job site. (*Id*. at ¶ 21.) When interviewed, the defendant reiterated much of the same information from the first interview about purchasing for two individuals. (*Id*.)

All told, the defendant was found to have purchased approximately 190 firearms

between August 2023 and November 2024.[1] (*Id* at ¶ 9.) Of these firearms, 41 have been recovered, with 38 in Mexico and one at a port of entry to Mexico. (*Id*.)

## II.    PRESENTENCE REPORT GUIDELINES CALCULATION

The Presentence Report calculates the defendant's Total Offense Level at 21, following adjustments for the number of firearms, knowledge the firearms would be transported to Mexico, and acceptance of responsibility. (PSR at ¶ 28-29, 35-36.) The PSR calculates the defendant's guideline range at 37-46 months at Criminal History Category I. (*Id*. at p. 15.) The plea agreement stipulates to a low-end cap. The PSR recommends a sentence of 37 months. (*Id*.)

## III.    ANALYSIS

Consistent with the PSR, the United States recommends that this Court sentence the defendant to 37 months' imprisonment. The recommended sentence is appropriate for several reasons, including the factors and goals outlined in 18 U.S.C. § 3553(a).

First and foremost, the recommended sentence is justified by the defendant's conduct and the need for the sentence to reflect the seriousness of it. The defendant trafficked an absurd amount of firearms over a relatively short period of time for personal profit. These firearms included high-powered rifles, such as a Barrett .50 caliber and multiple FN M249s rifles. He did this knowing that the firearms were being smuggled into Mexico. The sole purpose of this conduct is to arm transnational criminal organizations and promote violence. Compounding matters, the defendant continued to traffic firearms even after ATF personally warned him and seized firearms. Thus, a 37-month sentence is recommended as just punishment for the defendant's conduct and to deter the defendant and others from engaging in the same.

Second, the defendant lacks mitigation to justify a lesser sentence. Unlike many people convicted of crimes, this defendant was raised in a home free from abuse and

---

[1] The government counted approximately 176 firearms, based solely on received Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473s.

neglect, and his needs were met. (*Id*. at ¶ 47.) He has no apparent physical or mental health conditions and does not have a substance abuse problem. (*Id*. at ¶ 50-52.) The defendant's lack of criminal history is not particularly mitigating, as it allowed him to commit the charged offenses and is not different from defendants charged with the same crime.

Finally, the recommended sentence generally accords with similarly situated defendants and avoids unwarranted sentencing disparities. According to the United States Sentencing Commission's Judiciary Sentencing Information, from 2020 to 2024, there were 452 defendants sentenced under USSG § 2K2.1 with a Total Offense Level of 21 in Criminal History Category I. (*See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard.) Of those 452, 399 were sentenced to prison for average and median lengths of imprisonment of 30 months. (*Id*.) The government acknowledges that the recommended sentence is somewhat higher than the average and median sentences referenced above, but such a disparity is warranted in light of the defendant's continued conduct and the number of firearms he trafficked.

## IV.    CONCLUSION

The defendant trafficked nearly 200 firearms knowing that they would be used for an illicit purpose. The defendant continued to do so after ATF warned him and seized at least two firearms. Notwithstanding his lack of criminal history, this egregious conduct warrants a significant first sentence. Accordingly, the United States recommends that this Court sentence the defendant to 37 months' imprisonment. Such a sentence is sufficient, but not greater than necessary to comply with the sentencing factors and goals in 18 U.S.C. § 3553(a).

Respectfully submitted this 4th day of June, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*/s/ Patrick E. Chapman*
PATRICK E. CHAPMAN
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the foregoing date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Edward Grant Hamel, *Attorney for Defendant*

 */s/ Patrick E. Chapman*
U.S. Attorney's Office